T.C. Memo. 1995-465


UNITED STATES TAX COURT


BARBARA A. VRINER, A.K.A. BARBARA A. COYNE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8635-94.          Filed September 28, 1995.


<u>Arthur M. Lerner</u>, for petitioner.

<u>John W. Duncan</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CLAPP, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's 1987 Federal income tax in the amount of $36,417.
After concessions by the parties, the sole issue for decision is
whether petitioner is entitled to relief as an innocent spouse
for the taxable year 1987.  We hold that she is so entitled.

All section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the

Tax Court Rules of Practice and Procedure, unless otherwise indicated.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. We incorporate by reference the stipulation of facts and attached exhibits.

Petitioner resided in Champaign, Illinois, when she filed the petition in this case. Petitioner married William S. Vriner (Mr. Vriner) in 1980, and they obtained a divorce in 1993. From 1984 through 1987, petitioner and Mr. Vriner (the Vriners) filed joint Federal income tax returns, and they reported no taxable income during those years. The Vriners lived in a house acquired by Mr. Vriner prior to their marriage. The home was located in an older neighborhood with moderate- to low-priced homes. They received residential services including telephone, cable TV, garbage pickup, water, and electricity. During 1987, petitioner had credit accounts with Amoco Oil Co., J.C. Penney, and Bergners, and a Visa account with Chemical Bank.

Mr. Vriner, along with his parents and siblings, worked at a restaurant owned by his parents (the Vriner restaurant). When they first met, Mr. Vriner told petitioner that he worked at the Vriner restaurant for a living, and he later told her that the arrangement between him and his family's restaurant was none of her business. Petitioner never saw a paycheck of Mr. Vriner's from the restaurant, but she assumed that he was being paid. Mr.

Vriner would bring money home from the Vriner restaurant, and occasionally he would bring home groceries such as eggs, milk, or lettuce. Petitioner was employed as a dental receptionist.

On their 1987 joint return, the Vriners reported on Schedule E rental income and expenses from real estate. Mr. Vriner told petitioner that he owned the rental property with his brother, but petitioner knew little else about the property.

By 1987, the Vriners had closed their joint checking account because, when Mr. Vriner would take the checkbook to the Vriner restaurant, members of the Vriner family would write checks on the account. After closing the checking account, petitioner paid their bills either in cash or with a money order.

Mr. Vriner leased a car and told petitioner that he would take care of the payments in the amount of $266.84 per month. In June 1987, petitioner's father gave petitioner a 1977 Pontiac Bonneville. The Vriners had one child, and once or twice during their marriage they traveled to California to visit petitioner's parents. They rarely traveled on weekends or went out to dinner. Mr. Vriner purchased no expensive items for the home.

In 1988, Federal agents conducted a search of the Vriners' home. During the search, petitioner learned that her husband was under investigation for narcotics activities. No narcotics were found during the search, and petitioner had no knowledge of her husband's narcotics activities prior to the search. Although Mr. Vriner had prior arrests for driving under the influence, those

arrests all involved alcohol and not narcotics.  Petitioner had never seen any narcotics in their home.

Mr. Vriner subsequently was arrested, but he did not discuss his arrest with petitioner.  After reading the newspaper and attending her husband's court appearances, petitioner learned that Mr. Vriner and his brother had been trafficking in narcotics, and they stored the narcotics in a warehouse located in Urbana, Illinois.  The deficiency in this case stems from the proceeds of the Vriner brothers' drug activities.

## OPINION

Spouses filing a joint return are jointly and severally liable for the tax arising therefrom.  Sec. 6013(d)(3).  The innocent spouse rule permits a spouse to avoid joint and several liability in certain cases. Sec. 6013(e).  For petitioner to qualify as an innocent spouse, it must be established:  (1) That a joint return was filed for the year in issue; (2) that there was a substantial understatement of tax attributable to grossly erroneous items of Mr. Vriner; (3) that, in signing the return, she did not know or have reason to know of the substantial understatement; and (4) that taking into account all the facts and circumstances, it would be inequitable to hold her liable for the deficiency.  Sec. 6013(e)(1)(A)-(D).  Petitioner has the burden of proving each requirement of section 6013(e).  Rule 142(a); Russo v. Commissioner, 98 T.C. 28, 31-32 (1992).  A failure to meet any one of the requirements will preclude the

spouse from relief.  Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).  It is undisputed that the Vriners filed a joint return and that the return contained a substantial understatement of tax attributable to grossly erroneous items of Mr. Vriner. Respondent argues, however, that petitioner knew or had reason to know of the substantial understatements, and that it would not be inequitable to hold her liable for the deficiency.

Petitioner testified that she signed the 1987 Federal income tax return after being directed to do so by Mr. Vriner, and we are convinced that petitioner was not familiar with the contents of the return.  We find that petitioner had no actual knowledge of the substantial understatement of tax and, indeed, had no knowledge of her husband's alleged narcotics activities prior to the search of their home in 1988.  Thus, we must ascertain whether she had reason to know of the substantial understatement of tax.

A taxpayer has reason to know of a substantial understatement of tax if a reasonably prudent taxpayer in his or her position could be expected to know that the stated tax liability was erroneous or that further investigation was warranted.  Kistner v. Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994), revg. and remanding T.C. Memo. 1991-463; Stevens v. Commissioner, supra at 1505; Bokum v. Commissioner, supra at 153.

If the substantial understatement of tax is attributable to an omission of income, the spouse seeking relief has reason to know of the understatement if he or she has reason to know of the transaction that gave rise to the understatement. Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522; Smith v. Commissioner, 70 T.C. 651, 673 (1978). We may impute to the spouse seeking relief constructive knowledge of the transaction if he or she turned a blind eye to facts within his or her reach that would have put a reasonably prudent taxpayer on notice to inquire further. McCoy v. Commissioner, 57 T.C 732, 734 (1972).

In determining whether the spouse seeking relief had reason to know of the substantial understatement of tax, courts generally consider, among other factors, the spouse's level of education and involvement in the financial and business activities of the family. There is no information in the record concerning petitioner's educational background. Petitioner did not participate in the family's financial affairs other than paying assorted bills, and there is evidence that petitioner was not privy to any aspect of the Vriner family restaurant. Nor did petitioner have any knowledge of her husband's alleged drug activities prior to 1988 when Federal agents searched their home.

Respondent argues that petitioner had reason to know because the income reported on the Vriners' 1987 return was inadequate to meet the family expenses. Petitioner testified that she thought

the Vriner family was paying some of their expenses such as the house payment.  Petitioner's belief is reasonable in light of Mr. Vriner's close ties with his family and the family business, coupled with the fact that she was privy to no financial information.  Mr. Vriner reported income from rental property and also received money from the Vriner restaurant, and petitioner reasonably could conclude that Mr. Vriner used those funds to satisfy their monthly expenditures.  There were no unusual or lavish expenditures.  Thus, we conclude that petitioner did not know or have reason to know of the substantial understatements.

In determining whether it would be inequitable to hold petitioner jointly liable for the deficiency in tax for 1987, we consider whether she significantly benefited from the underpayments of tax.  Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989).  Any benefit received by petitioner must be considered in the totality of the circumstances.  Busse v. United States, 542 F.2d 421, 427 (7th Cir. 1976).  Petitioner received very little, if any, benefit from the funds that gave rise to the deficiency in this case.  Petitioner lived a modest lifestyle and made no extravagant expenditures.  Any benefit she received was in the form of necessities and normal support, with the possible exception of the two trips to California to visit her parents.  Normal support is not considered a significant benefit.  Belk v. Commissioner, 93 T.C. 434, 440 (1989).  We conclude that it would

be inequitable to hold petitioner liable for the deficiencies. We hold that petitioner qualifies as an innocent spouse.

Decision will be entered

for petitioner.